1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

MARK D. ANDERSON,

Plaintiff,

v.

FRANK BISIGNANO,

Defendant.

Case No.  5:24-cv-09503-BLF

**AMENDED ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

[Re:  Dkt. Nos. 9, 11]

Plaintiff Mark Anderson seeks review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Commissioner"), Frank Bisignano.[1]  Plaintiff filed a motion for summary judgment, Dkt. No. 9 ("Mot."), and the Commissioner filed a brief in opposition, Dkt. No. 11 ("Opp.").  Plaintiff filed a reply.  Dkt. No. 12 ("Reply").  The matter is deemed fully briefed and submitted without oral argument. Civ. L.R. 16-5.

For the following reasons, the Court DENIES Plaintiff's motion.

## I.    BACKGROUND

Plaintiff Mark Anderson alleges that he has a disability, based on a seizure disorder and associated cognitive impairments, that commenced on November 20, 2021, when he was sixty years old.  Dkt. No. 8 ("Admin. Rec.") at 211.  He has a high school education and had worked previously as a "carpenter/contractor."  *Id.* at 65.

Plaintiff filed an application for Title II Social Security Disability Insurance ("SSDI") benefits on May 4, 2022.  Admin. Rec. at 209–17.  After approximately two years of

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

administrative proceedings, Plaintiff participated in a hearing before Administrative Law Judge ("ALJ") Michael Cabotaje.  Following the hearing, the ALJ concluded that Plaintiff was not disabled.  *Id.* at 14–28.  Under the five-step sequential evaluation process for determining whether a claimant is disabled, *see* 20 C.F.R. § 404.1520, the ALJ determined that: (1) Plaintiff had not been engaged in "substantial gainful activity" during the relevant time period, *see* 20 C.F.R. § 404.1520(b), (2) Plaintiff has a seizure disorder, and the impairment caused by this disorder is severe, *see* 20 C.F.R. § 404.1520(c), (3) Plaintiff's impairment does not meet or equal any impairment described in 20 C.F.R.§ 404, Subpart P, Appendix 1, *see* 20 C.F.R. § 404.1520(d), (4) Plaintiff could not return to any past relevant work that he had conducted, *see* 20 C.F.R. § 404.1520(e)–(f), and (5) despite his impairment and inability to return to past work, Plaintiff was not disabled because he could do other work available in the national economy, *see* 20 C.F.R. § 404.1520(g).  Admin. Rec. at 14–32.  Plaintiff requested review by the Appeals Counsel, but this request was denied.  *Id.* at 1–6.  Accordingly, the ALJ's decision became a final order.

## II.   LEGAL STANDARD

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  However, "a federal court's review of Social Security determinations is quite limited," *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), and the court "may set aside a denial of benefits only if not supported by substantial evidence in the record or if it is based on legal error."  *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1084–85 (9th Cir. 2000) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  In other words, the court considers whether there is "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" reached by the ALJ.  *Id.* at 103.  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*

1   Courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve

2   ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th

3   Cir. 2014). Finally, "[e]ven when the ALJ commits legal error, [courts] uphold the decision where

4   that error is harmless." *Id.* at 1099.

5   **III.    DISCUSSION**

6       Plaintiff challenges the ALJ's decision on three grounds: First, that the ALJ improperly

7   addressed critical aspects of the medical opinion evidence; second, that the ALJ improperly

8   rejected Plaintiff's subjective testimony regarding his symptoms; and third, that the ALJ's finding

9   at step five of the sequential disability analysis is not supported by substantial evidence. Mot. at 2.

10      **A.    The ALJ's Treatment of the Medical Opinion Evidence**

11      In his challenge to the ALJ's treatment of the opinions of Dr. Barry Pierce, Dr. Robert

12   Tang, and Dr. Miriam Harris, Plaintiff argues that the ALJ failed to meet the requirement under 20

13   C.F.R. § 404.1520c(b)(2) to assess the persuasiveness of each medical opinion based on its

14   supportability and consistency with the evidence. Mot. at 13. The Court addresses the arguments

15   regarding each of these three medical opinions below.

16      In considering the factors of "supportability" and "consistency" when evaluating the

17   persuasiveness of a medical opinion, "[s]upportability means the extent to which a medical source

18   supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*

19   *v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)).

20   "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence

21   from other medical sources and nonmedical sources in the claim.'" *Id.* (citing 20 C.F.R.

22   § 404.1520c(c)(2)).

23      **1.  Dr. Barry Pierce**

24      The ALJ considered three opinions provided by Dr. Pierce. On June 20, 2022, Dr. Pierce

25   provided a Short-Form Evaluation for Mental Disorders, Admin. Rec. at 452, which stated that

26   Plaintiff's ability to "[p]erform activities within a schedule and maintain regular attendance" was

27   "fair," and his ability to "[c]omplete a normal workday and workweek without interruptions from

28   psychologically based symptoms" was "poor." *Id.* at 455. In that evaluation, most mental status

findings were normal and Dr. Pierce noted only "insomnia improving" in the "Progress in Treatment and Prognosis" narrative section. *Id.* at 454. A few weeks later, on July 13, 2022, Dr. Pierce submitted a brief summary letter stating that he had been treating Plaintiff for approximately fifteen months for insomnia and that Plaintiff "presents with no psychiatric disability." *Id.* at 460. Dr. Pierce's medical records covering the period from March 30, 2021 until February 23, 2023, as well as medical records from January 17, 2024, were submitted as well. *Id.* at 543–56. In addition, Dr. Pierce submitted responses to interrogatories on February 21, 2024 using a checkbox form on which Dr. Pierce indicated that Plaintiff would have various marked limitations related to "Understanding and Memory" and "Sustained Concentration and Persistence." *Id.* at 570–71. Dr. Pierce indicated that these conclusions regarding Plaintiff's limitations were based on a clinical interview and Plaintiff's self-report. *Id.* at 570. The ALJ determined that Dr. Pierce's opinion about Plaintiff's marked limitations in these areas was not persuasive. *Id.* at 25–26.

Plaintiff argues that the ALJ's conclusion that Dr. Pierce's 2024 opinion was not persuasive is not supported by the record, because—contrary to the ALJ's determination that Dr. Pierce's opinions contradicted one another and lacked a supporting narrative—Dr. Pierce's treatment notes "evolved as Anderson's cognitive impairment worsened" and were "consistent with the treatment notes from Anderson's other treating sources." *Id.* at 14. The Commissioner responds that "[a]s the ALJ observed, Dr. Pierce's February 2024 opinion expressly contradicted his earlier opinions" without indicating that this apparent contradiction was due to the opinion "evolving" as Plaintiff's impairments worsened over time. Opp. at 3. Although Dr. Pierce had an opportunity to include a narrative supporting his 2024 opinion, he did not do so, and his mental status examination findings were benign in comparison to the extreme limitations that the opinion indicated. *Id.* In addition, the Commissioner argues that the ALJ's brief statement that the level of dysfunction reported by Dr. Pierce was unsupported by the record is sufficient because it "was a reference to his earlier discussion of the four broad areas of mental functioning," where he explained how he determined that Plaintiff had only mild to moderate limitations despite Dr. Pierce's opinion that the limitations were "marked." *Id.* at 4–5.

1      The Court concludes that the ALJ appropriately considered the medical opinion evidence

2   from Dr. Pierce.  Although Dr. Pierce's 2024 medical opinion suggests that Plaintiff would be

3   markedly limited in a number of areas, the ALJ noted that this opinion is not supported by the

4   generally normal and benign findings in Dr. Pierce's 2022 mental status examination.  It is true, as

5   Plaintiff argues, that the opinions were offered nearly two years apart and that a medical condition

6   could conceivably grow more severe over such a time period; however, Dr. Pierce provided no

7   explanation for the contrast between the two medical opinions.  In other words, Dr. Pierce did not

8   offer any basis for finding his facially contradictory medical opinions consistent with each other.

9      In addition, the ALJ noted that Dr. Pierce's opinion that Plaintiff's ability to complete a

10   normal workday or workweek was "poor" did not provide important context, such as whether that

11   assessment was specific to complex work and/or Plaintiff's former work as a general contractor, or

12   whether the assessment was intended also to apply to Plaintiff's ability to perform work involving

13   only simple tasks.  Admin. Rec. at 25.  Because other evidence in the record indicated that

14   Plaintiff would have limitations in performing complex tasks but not simple tasks, the ALJ

15   determined that Dr. Pierce's opinion was not persuasive insofar as it could be read to imply that

16   Plaintiff's ability to complete a normal workday or workweek of any kind was "poor."  This is

17   relevant evidence that a reasonable mind could accept as adequate to support the ALJ's conclusion

18   that Dr. Pierce's medical opinion was of limited persuasive value given its lack of consistency and

19   supportability.  Accordingly, the ALJ's determination regarding Dr. Pierce's opinions is supported

20   by substantial evidence.

21                    **2.  Dr. Robert Tang**

22      Dr. Robert Tang provided a comprehensive internal medicine evaluation on September 9,

23   2022.  Admin. Rec. at 461–65.  The evaluation indicated that Plaintiff has a seizure disorder and

24   that his chief complaint with regard to the evaluation was that he had discontinued working in

25   November 2021 due to the seizure disorder.  *Id.* at 461.  In the evaluation, Dr. Tang opined that,

26   due to Plaintiff's various medical conditions, he should be limited to lifting and carrying 20

27   pounds occasionally and 10 pounds frequently and should be limited in his work around heights

28   and heavy machinery.  *Id.* at 464.  Dr. Tang also noted that Plaintiff was "highly dependent on his

United States District Court
Northern District of California

medications" but that other workplace limitations were not indicated.  *Id.*  The ALJ rejected Dr. Tang's opinions regarding Plaintiff's exertional limitations.  *Id.* at 26.

Plaintiff challenges the ALJ's conclusion that Dr. Tang's opinion was not persuasive because "[l]ifting/carrying restrictions are inconsistent with the claimant's reported ongoing home repair projects."  *Id.* at 15 (citing Admin. Rec. at 26).  Plaintiff states that, to the contrary, the exertional limitations suggested by Dr. Tang are supported by Plaintiff's seizure disorder, and further, that the ALJ should have "exercised his duty to fully and fairly develop the record by recontacting Dr. Tang" to ask further questions about those limitations.  *Id.*  The Commissioner responds that the ALJ reasonably found Dr. Tang's opinion inconsistent with other evidence, particularly Plaintiff's self-reported ability to complete home repair projects and lift things.  Opp. at 6.  The Commissioner also reiterates that Plaintiff testified that his seizures and auras have subsided with increased medication, meaning that his disability claim is predicated on the cognitive impacts of the seizure medication rather than on the seizures themselves.  *Id.* at 6–7.

The ALJ's determination with regard to Dr. Tang's opinion is supported by substantial evidence.  At the hearing before the ALJ, Plaintiff testified that he was not having seizures or auras, as both were controlled by Plaintiff's medication.  Admin. Rec. at 44.  As the Commissioner correctly points out, this testimony is inconsistent with Plaintiff's argument that the exertional limitations related to lifting and carrying heavy objects are an appropriate reflection of the risk that Plaintiff might have a seizure and drop something.  Moreover, although Plaintiff did testify that he got lightheaded when using ladders to conduct home repairs and that he had trouble with planning and organizing related to the home repair projects, he did not testify that it was difficult for him to lift and carry the sheetrock, tools, or other materials.  *See id.* at 45–48.  And Plaintiff's counsel represented at the hearing that "much of what [Plaintiff] premises his claim upon is cognitive[,] not physical."  *Id.* at 48.  This evidence is adequate to support the ALJ's conclusion that the overall record does not indicate a need for lifting/carrying restrictions.

The ALJ also did not fail to develop the record regarding Plaintiff's potential exertional limitations.  Although "[i]n Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant

is represented by counsel," that duty "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Plaintiff does not directly argue in his brief that Dr. Tang's recommended exertional limitations were ambiguous, saying only that *if* the ALJ had questions about the rationale for those limitations, he should have asked for Dr. Tang's input. Mot. at 15. It appears that the ALJ did not find the recommendations ambiguous; rather, he found that they were unpersuasive in light of other evidence. Moreover, the ALJ did develop the record further by asking Plaintiff a number of questions about his physical/exertional abilities at the hearing.

### 3.  Dr. Miriam Harris

Dr. Miriam Harris provided a Treating Physician General Medical Evaluation on July 8, 2022. Admin. Rec. at 457–58. Therein, Dr. Harris reported that Plaintiff had "focal seizures with week recovery time every 4-6 weeks" and that Plaintiff was "[u]nable to do construction work due to instability during and after focal seizures." *Id.* at 458.

The ALJ found that Dr. Harris's opinion that Plaintiff experienced focal seizures with a week of recovery time every four to six weeks was not persuasive, because "Dr. Harris indicated that focus [sic] seizures occurred every 4 to 6 weeks, which is inconsistent with the record showing no loss of consciousness seizures since 2019, with only 'auras' every 4 to 6 weeks, which improved with treatment." Admin. Rec. at 26. Plaintiff argues that this finding by the ALJ "demonstrates a fundamental lack of understanding of what a 'focal seizure' actually is and that it differs from a grand mal or 'loss of consciousness' seizure." Mot. at 16. In addition, Plaintiff argues that the ALJ's conclusion that Dr. Harris's opinion only demonstrated an inability to perform construction work ignores the portion of Dr. Harris's opinion determining that Plaintiff would require a week of recovery time out of approximately every month. *Id.*

The Commissioner responds that Dr. Harris's opinion was that Plaintiff "would be unable to do construction work" or to return to his past construction work and that, in fact, the ALJ's adjudication of Plaintiff's case was consistent with this opinion. Opp. at 5. The Commissioner states that Dr. Harris's opinion was properly limited to its relevance to construction work and further argues that Plaintiff's point about the recovery time required for a focal seizure is

1    irrelevant in light of the fact that Plaintiff has conceded that his seizures are no longer an issue.  *Id.*

2          Again, substantial evidence supports the ALJ's determination that Dr. Harris's medical

3    opinion was of limited persuasiveness.  Plaintiff is correct that the ALJ's order evinces some

4    confusion regarding Plaintiff's "auras," a term that Plaintiff uses interchangeably with "focal

5    seizures."  Thus, Dr. Harris's opinion that "foc[al] seizures occurred every 4 to 6 weeks" is not, as

6    the ALJ writes, inconsistent with a record showing "'auras' every 4 to 6 weeks."  However, the

7    reported frequency in Dr. Harris's opinion *is* inconsistent with Plaintiff's testimony that he no

8    longer experienced seizures or auras because the medication was effective in controlling them.

9    *See* Admin. Rec. at 44.  The Court understands this to be the basis for the ALJ's conclusion that

10   Dr. Harris's opinion contradicted the record regarding the "auras" improving with treatment.  *Id.*

11   at 26.  Furthermore, because the opinion that Plaintiff might require a week of recovery time out

12   of every month was tethered to the finding that Plaintiff had focal seizures every four to six weeks,

13   the ALJ did not improperly disregard a portion of Dr. Harris's opinion.  Having found that

14   Plaintiff's focal seizures/auras had improved with treatment since the time that Dr. Harris rendered

15   her opinion, the ALJ accordingly determined that Plaintiff would not require a week of time off

16   from work every month.  This finding is supported by substantial evidence.

17   **B.  The ALJ's Consideration of Plaintiff's Subjective Testimony**

18         "[S]ubstantial evidence does not support an ALJ's [residual functional capacity]

19   assessment if 'the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain

20   and symptoms.'"  *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting

21   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  "To determine whether a claimant's

22   subjective symptom testimony is credible, the ALJ must engage in a two-step analysis: 'First, the

23   ALJ must determine whether the claimant has presented objective medical evidence of an

24   underlying impairment which could reasonably be expected to produce the pain or other

25   symptoms alleged.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)).  "If the

26   claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ

27   can reject the claimant's testimony about the severity of [their] symptoms only by offering

28   specific, clear and convincing reasons for doing so."  *Id.* (citing *Garrison*, 759 F.3d at 1014–15).

United States District Court
Northern District of California

Plaintiff argues that the ALJ improperly failed to provide "clear and convincing reasons to discount" his testimony, as required under *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014). Although the ALJ cited the objective medical evidence as contradicting Plaintiff's testimony about the extent of his limitations, Plaintiff argues that the ALJ failed to identify the particular findings that were inconsistent. Mot. at 18. In addition, Plaintiff argues that his testimony "is consistent with the medical record and with the opinions of his treating and examining doctors that his cognitive impairments would result in missing days of work and needing extra supervision which would be inconsistent with the ability to sustain competitive employment." *Id.*

The Commissioner argues in response that the ALJ reasonably rejected Plaintiff's subjective testimony regarding the alleged severity of his symptoms. Opp. at 7. The Commissioner notes that Plaintiff "changed the basis for his disability claim" at the hearing before the ALJ, admitting that his seizures were controlled by medication and that the current basis for the claim was the cognitive issues resulting from the medication. *Id.* (citing Admin. Rec. at 44). In addition, the Commissioner argues that the ALJ's discounting of Plaintiff's description of the severity of those cognitive concerns was supported by the record, and that the ALJ properly "identified multiple inconsistencies" that supported his conclusion. *Id.* at 9–10.

The Court concludes that the ALJ's treatment of Plaintiff's subjective symptom testimony was proper. At step one of the analysis, the ALJ summarized Plaintiff's testimony regarding his impairments and the symptoms they caused. Admin. Rec. at 22. Plaintiff's alleged symptoms included: inability to "function normally for up to a week after each seizure or cluster of seizures," not feeling safe climbing tall ladders or working on roofs or under houses, and not being able to use power tools or drive for a few days to weeks after a seizure. *Id.* at 21. In addition, the ALJ noted Plaintiff's testimony that he could not work a full-time job and that he has cognitive issues, a bad memory, and low energy. *Id.* at 22. The ALJ found that Plaintiff's impairments of epilepsy and anxiety "could reasonably be expected to cause the alleged symptoms." *Id.*

However, at step two of the analysis the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ then

United States District Court
Northern District of California

United States District Court
Northern District of California

1    expounded on the inconsistencies between the record and Plaintiff's statements about his

2    symptoms.  Among the specific reasons given for rejecting Plaintiff's testimony about the severity

3    of his symptoms were: (1) that the record discloses effective treatment for seizures indicating that

4    he was no longer having "loss of consciousness seizures while awake since 2019" and "no longer

5    having auras" by May 9, 2022, *id.* at 23, and (2) that Plaintiff's performance on a MOCA test in

6    January 2024 indicated "mild cognitive impairment" that was "concentrated in memory and

7    visual-spatial processing," *id.* at 24.  Based on the full record, the ALJ determined that "seizure

8    precautions with specific limitations in activities associated with work as [a] contractor" were

9    merited, but that "the record does not corroborate [Plaintiff's] allegations of significant

10   dysfunction after auras" now that Plaintiff was "no longer having seizures or auras."  *Id.*  In

11   addition, the ALJ concluded that Plaintiff's "[r]eported difficulties with project management . . .

12   support a limitation to simple tasks and some detailed and complex tasks, but do not support

13   additional mental limitations," particularly given Plaintiff's psychiatrist's assessment that

14   Plaintiff's mental status examination was normal and Plaintiff's reported ability to drive and

15   conduct home repairs.  *Id.* at 24–25.

16        In other words, the ALJ did offer "specific, clear and convincing" reasons for rejecting

17   Plaintiff's subjective testimony about the severity of his symptoms by pointing to "inconsistent

18   objective medical evidence in the record," *Ferguson*, 95 F.4th at 1200, and inconsistent symptom

19   testimony from Plaintiff himself.  The ALJ's findings with regard to Plaintiff's residual functional

20   capacity are supported by substantial evidence.

21        **C.  The ALJ's Finding at Step Five of the Sequential Analysis**

22        Finally, regarding Step Five of the sequential analysis, Plaintiff argues that the ALJ asked

23   incomplete hypotheticals of the vocational expert and that this is reversible error because it means

24   that the vocational expert's opinion setting out alternative occupations Plaintiff could pursue "has

25   no evidentiary value."  Mot. at 19–20.  In response, the Commissioner argues that the accusation

26   of an incomplete hypothetical is derivative of the previous arguments because, in effect, "Plaintiff

27   is simply repeating his previous claims that the ALJ erred in evaluating the evidence."  Opp. at

28   10–11.

United States District Court
Northern District of California

1    Once a claimant "establishes a prima facie case of disability by showing that his

2    impairments prevent him from doing his previous job," the ALJ has the burden at step five of the

3    sequential analysis to demonstrate that "the claimant can do other substantial gainful activity

4    considering his age, education, and work experience." *See DeLorme v. Sullivan*, 924 F.2d 841,

5    849–50 (9th Cir. 1991).  The ALJ can do so by "pos[ing] a hypothetical for the vocational expert

6    which must outline the limitations of the particular claimant." *Id.* at 850.  If the hypothetical

7    "does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary

8    value to support a finding that the claimant can perform jobs in the national economy." *Hill v.

9    Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).

10    Here, Plaintiff admits that his argument regarding the purportedly incomplete hypothetical

11    posed to the vocational expert is "derivative" of his arguments that the ALJ's analysis of the

12    medical and symptom evidence was improper.  Mot. at 19.  But as discussed in the foregoing

13    sections of this Order, the ALJ did "make specific findings explaining his rationale" for

14    discounting certain medical evidence and certain of Plaintiff's "subjective complaints not included

15    in the hypothetical." *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

16    Accordingly, the hypothetical posed to the vocational expert was not incomplete, and the ALJ's

17    determination that Plaintiff could perform jobs available in the national economy was supported

18    by substantial evidence.

19

20

21

22

23

24

25

26

27

28

**IV.     ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is DENIED.  The determination of the Commissioner is AFFIRMED.*

**IT IS SO ORDERED.**

Dated:  August 19, 2025

_____
BETH LABSON FREEMAN
United States District Judge

---

\* This sentence was inadvertently omitted from ECF 13.